UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
EDDIE C. DEBERRY,

                Plaintiff,

    - against -                              **MEMORANDUM & ORDER**
                                                                   18-CV-7005 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Plaintiff Eddie C. Deberry brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("SSA") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 15, 17-1.) Plaintiff seeks reversal of the Commissioner's decision or, alternatively, remand for further administrative proceedings. The Commissioner asks the Court to affirm the denial of Plaintiff's claim. For the reasons that follow, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's motion. This case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

### I. Procedural History

       On April 16, 2015, Plaintiff filed an application for DIB, alleging disability beginning on June 1, 2014. (Administrative Transcript ("Tr."),[1] Dkt. 9, at 18, 177–78.) On July 7, 2015,

---

[1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower right corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

Plaintiff's application was initially denied. (*Id.* at 18, 88–93.) Plaintiff then filed a request for a hearing before an administrative law judge ("ALJ"). (*Id.* at 94.) On June 8, 2017, Plaintiff appeared with counsel before ALJ Jay L. Cohen. (*Id.* at 18, 39.) In a decision dated September 14, 2017, the ALJ determined that Plaintiff was not disabled under the Act and was not eligible for DIB. (*Id.* at 15–32.) On October 22, 2018, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the decision. (*Id.* at 1–5.) Thereafter, Plaintiff timely[2] commenced this action. (*See* Complaint ("Compl."), Dkt. 1.)

## II. The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe impairment."

---

[2] According to Title 42, United States Code, Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on October 27, 2018, and Plaintiff filed the instant action on December 10, 2018—44 days later. (*See generally* Compl., Dkt. 1.)

2

20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since "the first quarter of 2016"[3] (Tr. at 20–21) and that Plaintiff suffered from one severe impairment, cardiomyopathy[4] (*id.* at 21). Having determined that Plaintiff satisfied his burden at the first two steps, the ALJ progressed to the third step and determined that Plaintiff's cardiomyopathy did not meet or medically equal the severity of one of the impairments listed in the Act's regulations (the "Listings"), 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (*Id.* at 21–22.)

Moving to the fourth step, the ALJ found that Plaintiff maintained the residual functional capacity ("RFC")[5] to perform: "light work as defined in 20 CFR 404.1567(b)[6] except that the

---

[3] Plaintiff alleged a disability onset date of June 1, 2014, but the ALJ found that Plaintiff had continued to earn income from the teachers' union in 2015 and through the first quarter of 2016. (Tr. at 20–21.)

[4] Cardiomyopathy is a cardiovascular impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00(H)(3) ("Cardiomyopathy is a disease of the heart muscle. The heart loses its ability to pump blood (heart failure), and in some instances, heart rhythm is disturbed, leading to irregular heartbeats (arrhythmias).").

[5] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[6] According to the applicable regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

3

claimant must avoid concentrated exposure to temperature. The claimant cannot be exposed to heights or moving mechanical parts." (*Id.* at 22.) Relying on this RFC finding, the ALJ determined that Plaintiff was capable of performing his past relevant work as an elementary school teacher, as this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.* at 26.) The ALJ concluded that Plaintiff was not disabled under the SSA. (*Id.* at 27.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and alterations omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation omitted). Ultimately, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013).

## DISCUSSION

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence and was reached through material error. (Memorandum of Law in Support of Plaintiff's Motion

4

for Judgment on the Pleadings ("Pl.'s Mot."), Dkt. 15, at 6.) Specifically, Plaintiff argues that the ALJ (1) did not provide an adequately detailed and reasoned rationale describing the weight he accorded to each treating physician and consultative examiner report, and (2) did not refer to the required probative evidence in support of his assessments. (*Id.* at 10.) The Court agrees with Plaintiff and remands on the grounds that the ALJ accorded improper weight to the opinion of the consultative medical expert ("ME") and improperly discounted both the opinions of Plaintiff's treating physicians and Plaintiff's self-reported functional limitations.

I.  **Medical Expert Opinion**

The record contains the testimony of the consultative ME, Joseph R. Gaeta, M.D., a cardiologist (Tr. at 25, 63–71), who opined at the June 8, 2017 ALJ hearing that Plaintiff had a severe impairment of cardiomyopathy but could "consistently show up for work five days a week, and remain at work eight hours a day" (*id.* at 64). ME Gaeta also opined that Plaintiff could perform work with "light level restrictions," such as only occasionally "lifting, carrying, pulling, [or] pushing 20 pounds," and avoiding "extremes of temperature . . . heights, and work around moving machinery." (*Id.*) The ALJ afforded "significant weight" to ME Gaeta's opinion, which the ALJ deemed was "supported by the evidence," and ultimately based his RFC determination "on the testimony of the medical expert, a cardiologist." (*Id.* at 25.) This was error.

"The medical opinion of a non-examining medical expert does not constitute substantial evidence and may not be accorded significant weight." *Roman v. Astrue*, No. 10-CV-3085 (SLT), 2012 WL 4566128, at *16 (E.D.N.Y. Sept. 28, 2012) (citing *Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996)); *see also Minsky v. Apfel*, 65 F. Supp. 2d 124, 139 (E.D.N.Y. 1999) ("[Medical] advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." (quoting *Vargas v. Sullivan*, 898 F.2d 293, 295–96 (2d

5

Cir. 1990))). Furthermore, per the applicable regulations, "[w]hen the treating source has seen [the plaintiff] a number of times and long enough to have obtained a longitudinal picture of [the plaintiff's] impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source." 20 C.F.R. § 404.1527(c)(2)(i).

While ME Gaeta may have "had a chance to review the evidence" as to Plaintiff's condition (*id.* at 63), nothing in the record suggests that he conducted a personal examination of Plaintiff. According to the ALJ, ME Gaeta merely "pointed to exhibits in the record" to arrive at his conclusion, in which he disagreed with the findings of Plaintiff's two treating cardiologists. (*Id.* at 25.) In these circumstances, it is immaterial that ME Gaeta himself is a cardiologist. The ALJ's reliance on ME Gaeta's opinion, especially over those of Plaintiff's treating physicians, was inappropriate. *See, e.g.*, *Roman*, 2012 WL 4566128, at *16 (finding error where the ALJ assigned significant weight to the medical opinion of a non-examining medical expert).

Accordingly, the Court concludes that the ALJ erred in according "significant weight" to the opinion of ME Gaeta, especially given the contrary opinions of Plaintiff's two treating cardiologists.

## II. Treating Physicians' Opinions

"With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule[7] of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation

---

[7] Although "[t]he current version of the [Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, as the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); *see also* 20 C.F.R. § 404.1520(c). Because Plaintiff's claim was filed on October 22, 2014, the treating physician rule applies.

marks, brackets, and citations omitted). Under the treating physician rule, a treating source's opinion is given "controlling weight" so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). If the opinion of the treating physician is not given controlling weight, the ALJ must apply a number of factors in order to determine the opinion's proper weight. *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). These factors include: (i) the frequency of examination as well as the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating source's opinion; (iii) the extent to which the opinion is consistent with the record as a whole; (iv) whether the treating source is a specialist; and (v) other relevant factors. *See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).

Here, the ALJ concluded that "[t]he opinions of [Plaintiff's] treating physicians are not supported by the record and are given limited weight." (Tr. at 24.) The Court finds that the ALJ erred where he accorded only "limited weight" to the opinions of Plaintiff's treating physicians, Michael K. Jason, M.D., and Michael Friedman, M.D., especially where the ALJ instead gave "significant weight" to the opinion of the consultative ME, who never examined Plaintiff.

Dr. Jason saw Plaintiff at Long Island Heart Associates on August 19, 2015; July 23, 2015; and July 17, 2014. (*Id.* at 490–98.) On July 17, 2014, Plaintiff was noted to have, *inter alia*, mild to moderate left ventricle systolic dysfunction with an ejection fraction ("EF")[8] of 45%, a normal size left ventricle, and evidence of anteroapical hypokinesis. (*Id.* at 490.) In a cardiac impairment

---

[8] An EF "represents the percentage of the blood in the ventricle actually pumped out with each contraction." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00(D)(1)(a)(i). ME Gaeta explained that an EF of 43% or 45% is "mildly abnormal." (Tr. at 66.) Plaintiff's EF was measured at 35% during examinations in both 2014 and 2016, which even ME Gaeta noted is "low." (*Id.* at 67.) Per the regulations, "an EF of 30 percent or less . . . may be associated clinically with systolic failure"—evidence of chronic heart failure. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00(D)(2)(a)(ii).

7

questionnaire dated May 12, 2015, Dr. Jason noted Plaintiff's history of "congestive cardiomyopathy[9] class III-IV[10] congestive heart failure symptomatology associated with congestive cardiomyopathy." (*Id.* at 473.) Dr. Jason cited evidence of reduced left ventricular ("LV") function and an EF of 35%. (*Id.*) Dr. Jason further described that Plaintiff was unable to walk one block without "significant shortness of breath." (*Id.*) Based on these findings, Dr. Jason advised Plaintiff "not to work at present." (*Id.* at 474.) In the cardiac impairment questionnaire, Dr. Jason also diagnosed Plaintiff with congestive cardiomyopathy and left ventricular dysfunction. (*Id.* at 477.) He indicated that Plaintiff could only perform a job in a seated, standing, or walking position for less than one hour and could never/rarely lift more than 0-5 lbs. (*Id.* at 479.) He noted that Plaintiff experienced shortness of breath, fatigue, weakness, arrhythmia, palpitations, and cough, and that physical exertion was a precipitating factor of Plaintiff's pain. (*Id.* at 478.) Dr. Jason concluded the May 12, 2015 cardiac impairment questionnaire with the opinion that Plaintiff was unable to handle "any type of work" due to his condition. (*Id.* at 482.)

The record also includes reports from Plaintiff's examinations with Dr. Friedman, another cardiologist at Long Island Heart Associates, on July 22, 2016 (*id.* at 524–29); March 10, 2016 (*id.* at 535–38); February 24, 2016 (*id.* at 540–43); February 10, 2016 (*id.* at 544–47); and December 18, 2015 (*id.* at 686–89). In December 2015, Plaintiff complained of palpitations, chest

---

[9] Congestive cardiomyopathy, or dilated cardiomyopathy, is the "decreased function of the left ventricle associated with its dilation." *See dilated cardiomyopathy*, STEDMAN'S MEDICAL DICTIONARY 144770. The condition is "usually manifested by signs of overall cardiac failure, with congestive findings, as well as by fatigue indicative of a low output state." *Id.*

[10] According to the New York Heart Association ("NYHA") classifications, Class III consists of "patients with cardiac disease producing marked limitation of activity," while Class IV consists of patients "with cardiac disease resulting in inability to carry on any physical activity without discomfort." *See New York Heart Association classification*, STEDMAN'S MEDICAL DICTIONARY 180390.

8

pain, dizziness, and pain in his lower extremities when walking more than one flight of steps. (*Id.* at 686.) He also complained of worsening limitations in physical activities over the prior six months. (*Id.*) Dr. Friedman diagnosed, *inter alia*, chest pain "now resolved"; dilated cardiomyopathy resulting in reduced LV function; shortness of breath; and premature ventricular depolarization. (*Id.* at 688.) In subsequent examinations, Plaintiff maintained his complaints of chest pain (*id.* at 540, 544), for which Dr. Friedman prescribed Imdur (*id.* at 542, 546). Plaintiff's February 26, 2016 angiography showed, *inter alia*, mild LV hypokinesis, mild cardiomyopathy, and an EF of 45%. (*Id.* at 518.) At a follow-up visit with Dr. Friedman on March 10, 2016, Plaintiff was again assessed as having dilated cardiomyopathy, reduced LV function, shortness of breath, ventricular premature depolarization, weakness, and dizziness. (*Id.* at 537.) During his visit on July 22, 2016, Plaintiff was found to have an EF of 43% (*id.* at 524), and Dr. Friedman maintained his earlier assessment that Plaintiff still experienced, *inter alia*, dilated cardiomyopathy, reduced LV function, shortness of breath, ventricular premature depolarization, weakness, and dizziness (*id.* at 528).

Dr. Friedman completed a Cardiac Impairment Questionnaire on April 4, 2017, in which he diagnosed Plaintiff with congestive heart failure, NYHA Class III. (*Id.* at 713.) Dr. Friedman noted that Plaintiff could not lift or carry any weight and could perform less than an hour of work in any position (seated or standing/walking) in an eight-hour work day. (*Id.* at 715.) Dr. Friedman opined that Plaintiff would need to frequently take unscheduled breaks for unpredictable intervals of time and would miss work more than three times a month. (*Id.* at 717.)

When an ALJ does not afford controlling weight to the opinions of Plaintiff's treating physicians, the ALJ is required to determine the opinions' proper weight by considering factors such as the frequency of examination; the length, nature, and extent of each physician's treatment

9

relationship with Plaintiff; the evidence in support of the treating physicians' opinions; their opinions' consistency with the entire record; whether they were specialists; and other relevant factors. *See Shaw*, 221 F.3d at 134. While "[t]he ALJ is not required to explicitly discuss the factors, [] it must be clear from the decision that the proper analysis was undertaken." *Elliott v. Colvin*, No. 13-CV-2673 (MKB), 2014 WL 4793452, at *15 (E.D.N.Y. Sept. 24, 2014) (internal citation omitted). And, if the ALJ repudiates the opinions of the treating physicians, he must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (per curiam).

Here, despite assigning "limited weight" to the opinions of Plaintiff's two treating cardiologists, the ALJ stated that he had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527" (Tr. at 22), and otherwise only recited the various medical findings and conclusions of Drs. Jason and Friedman (*see id.* at 22–26). The ALJ's rationale for the limited weight accorded to the treating cardiologists' opinions was, in full: "The opinions of Drs. Jason and Friedman are not well supported by the record as the record indicated that [Plaintiff's] ejection improved to between 40 and 45% and [Plaintiff's] impairment has been described as either mild or moderate systolic dysfunction." (*Id.* at 24.) However, the mere fact that Plaintiff's cardiomyopathy was described as mild or moderate systolic dysfunction in February 2016 ignores the numerous other symptoms observed, recorded, and factored into their opinions by Plaintiff's treating cardiologists over years of treatment. Accordingly, the Court concludes that, in light of the relevant case law and record evidence, the ALJ did not provide a sufficiently comprehensive rationale for the "limited weight" accorded to the opinions of Drs. Jason and Friedman. *See Burgin v. Astrue*, 348 F. App'x 646, 648 (2d Cir. 2009) (summary order)

("The failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand." (quoting *Halloran*, 362 F.3d at 33) (other citation omitted)).

Furthermore, to the extent the ALJ believed that the treating cardiologists' records were internally inconsistent or inconsistent with other evidence in the record—*e.g.*, the opinion of ME Gaeta—the ALJ should have taken affirmative steps to develop a sufficient evidentiary record, such as soliciting updated medical opinions from these physicians. "[T]he ALJ must make every reasonable effort to help an applicant get medical reports from his medical sources" and "must seek additional evidence or clarification when the report from the claimant's medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (internal quotation, citations, and alterations omitted).

Of note, Plaintiff also received a premature ventricular contraction ("PVC") ablation[11] on May 24, 2017—some two weeks before his hearing before the ALJ—after which Plaintiff felt "worse." (Tr. at 49, 54–55, 59–60, 732–36.) At the hearing, Plaintiff testified that, after the ablation, he felt "abnormal beats" and "a burning inside of the muscle." (*Id.* at 55.) Plaintiff had not seen Dr. Friedman in the time between the ablation and the ALJ hearing but had an appointment with Dr. Friedman scheduled for two weeks after the hearing. (*Id.* at 50.) Even if medical records from a subsequent appointment with Dr. Friedman would have been untimely for purposes of the ALJ's decision, Plaintiff's self-reported functionality as a result of his ablation should have received greater weight, which the Court discusses next.

---

[11] "Ablation is a procedure that uses tiny catheters to destroy very small, carefully selected parts of heart tissue that cause arrhythmia and tachycardia." *Davila v. Barnhart*, No. 03-CV-3981 (DLC), 2004 WL 2914073, at *4 n.5 (S.D.N.Y. Dec. 15, 2004).

## III. Plaintiff's Self-Reported Functionality

The ALJ stated that he considered Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms" and found that they were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 26.)

While an ALJ is not "required to credit [a plaintiff's] testimony about the severity of [his] pain and the functional limitations it cause[s]," *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order), the ALJ does not have unbounded discretion in choosing to reject it. "[T]he subjective element of pain is an important factor to be considered in determining disability." *Perez v. Barnhart*, 234 F. Supp. 2d 336, 340 (S.D.N.Y. 2002) (quoting *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984)); *see also* 20 C.F.R. § 404.1529(c)(4) ("[The claimant's] symptoms, including pain, will be determined to diminish [the claimant's] capacity for basic work activities to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence."). Thus, the ALJ determines not whether the objective medical evidence of a plaintiff's pain is consistent with an inability to perform all substantial activity, but whether a plaintiff's statements as to his pain are consistent with the objective medical evidence. *See Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010) ("The issue is . . . whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of [his] pain are consistent with the objective medical and other evidence." (internal citations omitted)).

The ALJ in the instant action erred by not properly conducting the latter analysis. Pursuant to the applicable regulation, the ALJ considered Plaintiff's "daily activities"; the "location, duration, frequency, and intensity" of pain; "[p]recipitating and aggravating factors"; the "type, dosage, effectiveness, and side effects of any medication" taken by Plaintiff; treatment "other than

medication"; measures used by Plaintiff to relieve pain or symptoms; and "[o]ther factors" concerning Plaintiff's functional limitations. (Tr. at 26 (citing 20 C.F.R. § 404.1529(c)(3).) Citing Plaintiff's May 18, 2015 Function Report, the ALJ noted that Plaintiff's "medical treatment has been conservative" and that Plaintiff was "engag[ing] in a reasonably broad range of daily living activities, including going for walks, preparing some food, shopping, and spending time with others." (*Id.*; *see also id.* at 212–22.) The ALJ's reliance on a two-year-old set of functional limitations was clearly improper, where Plaintiff's treating cardiologists had catalogued limitations through and up to the June 2017 ALJ hearing, and where, at the ALJ hearing, Plaintiff testified that he "[didn't] really lift anything" (*id.* at 48), stayed "in bed most of the day," and did not cook, clean, shop, or drive (*id.* at 52–53). Plaintiff further testified at the hearing that, if he "ha[d] to go down the stairs" he would be out of breath. (*Id.* at 54.) For recreation, Plaintiff stated that he would "try" to watch television or read, but would have to "stop" when he became dizzy. (*Id.* at 53.) Plaintiff testified that he spoke to his doctors about his dizziness, which they opined was caused by "the combination of [Plaintiff's] condition and the medication," although they did not suggest that Plaintiff "take some other type of medication" for his condition. (*Id.* at 56.) Plaintiff further testified that his condition worsened after the PVC ablation. (*Id.* at 59–60.)

To the extent Plaintiff received only "conservative" medical treatment, the Second Circuit is clear that an ALJ may not determine "that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered[.]" *Shaw*, 221 F.3d at 134. Furthermore, "'subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other "objective" medical evidence,' so long as the pain results from a 'physical or mental impairment' as defined by section 223(d)(3) of the

Act[.]"[12] *Lim v. Colvin*, 243 F. Supp. 3d 307, 316 (E.D.N.Y. 2017) (quoting *Aubeuf v. Schweiker*, 649 F.2d 107, 111–12 (2d Cir. 1981)) (other citation omitted); *see also Henriquez v. Chater*, No. 94-CV-7699 (SS), 1996 WL 103828, at *4 (S.D.N.Y. Mar. 11, 1996) ("A claimant's testimony about pain may not be discounted solely because objective clinical findings cannot establish a cause for pain." (citing *Marcus v. Califano*, 615 F.2d 23 (2d Cir. 1979))).

Here, Dr. Friedman indicated that Plaintiff continued to feel chest pain as recently as April 4, 2017 (Tr. at 713), while Plaintiff testified at the hearing in June 2017 that he continued to experience chest pain in conjunction with shortness of breath, dizziness, and fatigue (*id.* at 46). The ALJ thus improperly disregarded Plaintiff's testimony and the record evidence in favor of a handful of anecdotes that seemed to indicate Plaintiff's functionality. *See Lim*, 243 F. Supp. 3d at 317 n.7 (remanding case, given the plaintiff's subjective complaints of pain and accordingly limited functionality, with the direction that "[t]hese stated limitations should be considered on remand"). Accordingly, the Court deems that remand is appropriate so that Plaintiff's reported current functional limitations can be more thoroughly considered.

\* \* \*

In sum, the Court finds that the ALJ (1) accorded undue weight to the opinion of the non-examining medical expert, Dr. Gaeta; (2) failed to accord proper weight to the opinions of Plaintiff's treating cardiologists, Drs. Jason and Friedman; and (3) did not properly credit Plaintiff's subjective complaints of pain.

---

[12] Section 223(d)(3) of the Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Here, the ALJ acknowledged that Plaintiff's cardiomyopathy was a "severe impairment" under 20 C.F.R. § 404.1520(c). (*See* Tr. at 21.)

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 7, 2020
       Brooklyn, New York